**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CHRISTOPHER BELMONTE,**

    **Petitioner,**

                                     **CASE NO. 2:12-CV-911**

    **v.**                                **JUDGE WATSON**

                                     **MAGISTRATE JUDGE KING**

**BRIAN COOK, WARDEN,**

    **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition*, Doc. No. 1, Respondent's *Motion to Dismiss*, Doc. No. 5, Petitioner's *Reply,* Doc. No. 8,  and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss* be **GRANTED** and that this action be **DISMISSED.**

**FACTS and PROCEDURAL HISTORY**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On December 19, 2008, at about 5:35 p.m., appellant was at his brother's restaurant helping him prepare food for an event later that evening. Footage from the restaurant's surveillance video shows that, at 5:59 p.m., appellant consumed one double Jack Daniel's and Coke. At 6:32 p.m., appellant consumed another double Jack Daniel's and Coke. Appellant left the restaurant a few minutes later.
>
> At about 6:50 p.m., Dennis Wilburn and appellant were involved in an automobile collision. Dalynaca Watrous, the 11–year–old daughter of Wilburn who was traveling with Wilburn, died in the accident. Marissa, David, and Harley Moorhead, the children of Wilburn's girlfriend, were in the backseat of Wilburn's vehicle and

1

suffered serious injuries, as did Wilburn. Another child was in Wilburn's vehicle, but none of the indicted counts pertained to her. Appellant also suffered injuries in the accident.

Franklin County Sheriff Deputy David Aurigemma testified he had one 30–second conversation with appellant while he was still in his vehicle and then later a one-minute conversation with appellant while he was still in his vehicle. Aurigemma smelled a "slight to moderate" odor of alcohol emanating from appellant, and he notified his supervisor, Lieutenant Crowston. Appellant was transported to the hospital.

Crowston sent Franklin County Sheriff Deputy Scott Morris to the hospital to obtain a blood sample from appellant. Morris smelled a "slight" odor of alcohol while he conversed with appellant at the hospital. Morris then read appellant the BMV 2255 ALS form ("implied consent form"), which indicates an arrest for operating a vehicle under the influence. Appellant consented to have his blood drawn for testing, and the blood was drawn at 8:20 p.m. The parties stipulated that appellant had a blood alcohol content ("BAC") of 0.140 grams at the time the blood sample was obtained. Dr. John Wyman testified at trial that by back-extrapolating from appellant's 0.140 BAC at the time of the blood draw, appellant had a BAC of 0.048 to 0.063 at the time of the accident.

Appellant was indicted as follows: Count 1—aggravated vehicular homicide, which pertained to the death of Watrous; Count 2—aggravated vehicular homicide, which pertained to the death of Watrous; Count 3—aggravated vehicular assault, which pertained to the injuries to Wilburn; Count 4—vehicular assault, which pertained to the injuries to Wilburn; Count 5—aggravated vehicular assault, which pertained to the injuries to Marissa; Count 6—vehicular assault, which pertained to the injuries to Marissa; Count 7—aggravated vehicular assault, which pertained to the injuries to David; Count 8—vehicular assault, which pertained to the injuries to David; Count 9—aggravated vehicular assault, which pertained to the injuries to Harley; Count 10—vehicular assault, which pertained to the injuries to Harley; Count 11—operating a vehicle under the influence of alcohol or drugs; and Count 12—operating a vehicle under the influence of alcohol or drugs.

A jury trial commenced on February 23, 2010, and the jury returned a verdict finding appellant guilty on all counts. On April 2, 2010, the trial court entered judgment on the jury verdict and

sentenced appellant to prison terms of eight years on Count 1; three years on Count 3; one year on Counts 5, 7, and 9; and six months on Count 11. The court ordered Counts 1, 3, 5, 7, and 9 to be served consecutively to each other and concurrent to Count 11, for a total of 14 years. The court merged the remaining counts for purposes of sentencing, imposed a lifetime driver's license suspension, placed appellant on community control for five years as to Count 11, and ordered appellant to perform 500 hours of community service. Appellant appeals the judgment of the trial court, asserting the following assignments of error:

I. Appellant was denied [a] fair trial [a]s guaranteed by the sixth and fourteenth amendments of the United States Constitution because the defendant was denied effective assistance of counsel.

II. The trial court erred by allowing Dr. Wyman to testify about the effect a blood-alcohol content of .048 to .063 has on an average person.

III. Appellant's convictions were not supported by the evidence and were against the manifest weight of the evidence.

IV. Prosecutorial misconduct deprived the defendant of a fair trial and due process of law in violation of the fourteenth amendment to the U.S. Constitution.

V. The Court erred by allowing improper opinion testimony to be admitted over objection in closing statements.

VI. The trial court erred by imposing consecutive sentences without making the required statutory findings pursuant to R.C. 2929 .14(E)(4) and R.C. 2929.11.

*State v. Belmonte*, No. 10AP-373, 2011 WL 982735, at *1-2 (Ohio App. 10th Dist. March 22, 2011).  On July 6, 2011, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Belmonte*, 129 Ohio St.3d 1411 (2011).

On October 4, 2012, Petitioner filed this action pursuant to 28 U.S.C. § 2254.  He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

1.  Petitioner was denied effective assistance of counsel as guaranteed by the 6th and 14th Amendments of the United States Constitution when trial counsel failed to file a motion to suppress the blood alcohol test and failed to object to inadmissible testimony.

2.  Petitioner was convicted based on insufficient evidence in violation of the 5th and 14th Amendments to the U.S. Constitution.

3.  Petitioner was denied due process when the trial court permitted Dr. Wyman to testify about the effect a blood-alcohol content of .048 to .063 has on an average person. \

Respondent argues that this action is untimely.  Alternatively, Respondent contends that Petitioner's claims are without merit or procedurally defaulted.

## STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. § 2244(d) provides:

(d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's conviction became final on October 4, 2011, *i.e.,* ninety days after the Ohio Supreme Court's July 6, 2011, dismissal of his appeal, when the time to file a petition for a writ of *certiorari* in the United States Supreme Court expired. *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The statute of limitations therefore began to run on October 5, 2011. *See Keeling v. Warden, Lebanon Correctional Inst*., 673 F.3d 452, 460 (6th Cir. 2012)(citing Fed.R.Civ.P. 6(a)(1) ("[I]n computing any time period ... exclude the day of the event that triggers the period"); *Bronaugh v. Ohio*, 235 F.3d at 285 (applying Rule 6(a) standards to computation of time for section 2244(d) statute of limitations purposes). The statute of limitations expired one year later. Petitioner filed this habeas corpus petition on October 4, 2012.

The period between October 4, 2011, and October 4, 2012, was 366 days, not 365 days, because 2012 was a leap year. Respondent argues that Petitioner therefore filed his habeas corpus petition one day late. *See Motion to Dismiss.* The United States Court of Appeals for the Sixth Circuit has yet to address this precise issue. This Court, however, agrees with those courts that have rejected Respondent's argument that 28 U.S.C. § 2244(d) imposes a statute of limitations of 365 days, and instead concludes that the "anniversary method" applies:

> Respondents' argument. . . ignores the fact that Congress opted to express the AEDPA's limitation period in terms of years, not days. In light of this fact, "[e]very federal circuit that has addressed the issue has concluded that ... the 'anniversary' method ... applies to the AEDPA's one-year limitation period." *Espinoza v. Lopez*, 2012

5

WL 2995475, at *2 (E.D.Cal. July 23, 2012) (citing cases); see *Rogers v. United States*, 180 F.3d 349, 355 & n. 13 (1st Cir.1999) (noting that limitation periods expressed in years end on the anniversary of their start date). This method is not altered—and, indeed, has been explicitly and sensibly endorsed—regardless of whether the year involved contains 365 or 366 days:

> [W]hat matters is establishing an unequivocal rule that lets litigants know where they stand and spares judges from becoming enmeshed in such nitpicking.... [T]he anniversary date is clear and predictable and therefore easier for litigants to remember, for lawyers to put in their tickler files, and for courts to administer.... The anniversary date will be the last day to file even when the intervening period includes the extra leap year day.

*United States v. Marcello*, 212 F.3d 1005, 1009–10 (7th Cir. 2000) (emphasis added); *see Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (citing *Marcello* and agreeing that "the 'anniversary method' ... has the advantage of being easier for petitioners, their attorneys and the courts to remember and apply"); *see also United States v. Hurst*, 322 F.3d 1256, 1260–62 (10th Cir. 2003) (applying anniversary rule to a leap year); *Lopez v. Lee*, 2011 WL 6068119, at *5 n. 6 (E.D.N.Y. Dec.7, 2011) (same).

*Mecca v. Corbett*, 2013 WL 773068, at *2 (D. Mass. Jan. 15, 2013)(footnote omitted).

The Magistrate Judge therefore **RECOMMENDS** that Respondent's *Motion to Dismiss,* Doc. No. 5, be **DENIED**.

### PROCEDURAL DEFAULT

Respondent alternatively argues that Petitioner has procedurally defaulted his first claim, *i.e.*, that he was denied the effective assistance of trial counsel when his attorney made no objection to the testimony of Deputy Morris.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present

those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray v. Carrier*, 477 U.S. 478, 485 (1986*); Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level*. Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

7

In claim one, Petitioner asserts, *inter alia*, that he was denied the effective assistance of trial counsel because his attorney failed to object to testimony of Deputy Scott Morris.  Petitioner properly raised this claim in the Ohio Court of Appeals.  He failed, however, to again raise the claim on appeal to the Ohio Supreme Court.  *See Exhibit 11 to Motion to Dismiss*.  He may now no longer do so by operation of  Ohio's doctrine of *res judicata.  State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given the opportunity to enforce this procedural rule. The Court therefore deems the first and second parts of *Maupin* to have been met with respect to petitioner's first claim.

Further, the Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins,* 209 F.3d 486, 521-22 (6th Cir. 2000*); Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims. *See State v. Cole; State v. Ishmail.* Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. The third part of the *Maupin* test has therefore been met.

Petitioner may still obtain review of his claim on the merits, if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violation.  As cause for his procedural default, Petitioner asserts that his appellate counsel performed in a

constitutionally ineffective manner by failing to raise the claim in the Ohio Supreme Court. *See Reply.* "[I]n order to constitute 'cause' to excuse a procedural default, there must be a right to assistance of counsel in the state proceeding in the first place." *Walker v. Jackson*, No. 08-cv-1011, 2009 WL 1911770, at *6 (N.D. Ohio June 26, 2009)(citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). There is no right to counsel in an appeal to the Ohio Supreme Court. *See id.* (citing *Ross v. Moffitt,* 417 U.S. 600, 610 (1971); *Halbert v. Michigan*, 545 U.S. 605 (2005)). Petitioner has therefore failed to establish cause for this procedural default.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333. After review of the record, the Court does not deem this to be such a case.

### CLAIM ONE

Petitioner also asserts in claim one that he was denied the effective assistance of trial counsel because his attorney failed to file a motion to suppress the results of his blood alcohol test. The state appellate court rejected this claim, reasoning as follows:

> Appellant argues in his first assignment of error that he was denied effective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel. *McMann v. Richardson* (1970), 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763. Courts employ a two-step process to determine whether the right to effective assistance of counsel has been violated. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance

9

prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.*

An attorney properly licensed in the state of Ohio is presumed competent. *State v. Lott* (1990), 51 Ohio St.3d 160, 174, 555 N.E.2d 293. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy. *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 477 N.E.2d 1128. In demonstrating prejudice, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

Appellant first argues that his trial counsel was ineffective when he failed to file a motion to suppress the blood alcohol test despite the fact that the police did not have probable cause to arrest him. To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question. *State v. Brown*, 115 Ohio St.3d 55, 873 N.E.2d 858, 2007–Ohio–4837, ¶ 65.

Appellant's contention is that the officer did not have a right to request that he voluntarily submit to a blood alcohol test because the officer did not have probable cause to believe that appellant was driving under the influence of alcohol. A valid arrest supported by probable cause that a defendant was operating a motor vehicle while under the influence of alcohol is a condition precedent to obtaining a defendant's consent to take a blood alcohol test after reading the implied consent form. *State v. Risner* (1977), 55 Ohio App.2d 77, 80, 379 N.E.2d 262; R.C. 4511.191(A). In the absence of a valid arrest, consent obtained after a reading of the implied consent form is considered involuntary, and the test results are inadmissible. *Risner* at 80, 379 N.E.2d 262. The legal standard for determining whether the police had probable cause to arrest an individual for operating a motor vehicle while intoxicated is whether, "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Homan* (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952; *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142. In making this determination, the trial court must examine the totality of facts and circumstances surrounding the arrest. *See State v. Miller* (1997), 117 Ohio App.3d 750, 761,

691 N.E.2d 703; *State v. Brandenburg* (1987), 41 Ohio App.3d 109, 111, 534 N.E.2d 906. Probable cause to arrest may exist, even without field sobriety test results, if supported by such factors as: evidence that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking. *Oregon v. Szakovits* (1972), 32 Ohio St.2d 271, 291 N.E.2d 742; *Fairfield v. Regner* (1985), 23 Ohio App.3d 79, 84, 491 N.E.2d 333; *State v. Bernard* (1985), 20 Ohio App.3d 375, 376, 486 N.E.2d 866; *Westlake v. Vilfroy* (1983), 11 Ohio App.3d 26, 27, 462 N.E.2d 1241; *State v. Slocum*, 11th Dist. No.2007–A–0081, 2008–Ohio–4157, ¶ 50 (admission by a driver that he has consumed alcoholic beverages is a factor to be considered in a probable cause determination for a driving under the influence arrest).

Here, after examining the totality of the facts and circumstances, we find that, at the moment of arrest, the police had sufficient information to cause a prudent person to believe appellant was driving under the influence. Deputy Aurigemma testified it was sprinkling rain when he arrived at the scene, and the roadways were wet. He interacted with appellant on two occasions at the scene while appellant sat in his vehicle. The first communication lasted about 30 seconds, and the second communication lasted about one minute. Both communications concerned appellant's medical condition and his transportation to the hospital, although appellant did give a vague description of what had happened. Aurigemma testified that, during these interactions, he smelled a slight to moderate odor of alcohol coming from appellant's vehicle. He then notified Lieutenant Crowston that he had smelled alcohol. Because of appellant's pain and injuries, Aurigemma could not perform any field sobriety tests.

Deputy Scott Morris testified that, based on Aurigemma's information, Crowston sent Morris to the hospital to check on appellant's well being and draw his blood for testing. Morris stated that, at the hospital, appellant told him he had consumed a "couple" of beers. Morris said appellant was upset about being involved in the accident, and he smelled a slight odor of alcohol from appellant. Appellant was cooperative and listened to and appeared to understand everything Morris said. Appellant also told Morris that he thought he was "messing" with his cell phone and went left of center at the time of the accident. Morris then read appellant the BMV 2255 ALS implied consent form. He said appellant was very cooperative and consented to a blood test.

Appellant's main contention is that there was no probable cause to believe he had been driving intoxicated at the time Crowston ordered Morris to go to the hospital and obtain a blood sample from appellant, and the statements that appellant gave to Morris regarding his alcohol consumption and Morris's smelling of alcohol on appellant's person were subsequent to Crowston's order for a blood draw. However, the relevant inquiry is whether police had probable cause "at the moment of arrest." *Homan* at 427, 732 N.E.2d 952. The moment of arrest was not until after Morris arrived at the hospital and gained further information from appellant. Based upon all of the information obtained prior to the arrest, the police had probable cause to arrest appellant. Beyond the evidence of the automobile accident itself, Aurigemma also smelled a slight to moderate odor of alcohol on appellant at the scene. Appellant then admitted to Morris at the hospital that he had consumed a couple of beers prior to the accident and believed he had traveled left of center. Morris also smelled a slight odor of alcohol on appellant's person. Although neither Morris nor Aurigemma witnessed appellant having red eyes, slurred speech, or difficulty walking, as pointed out by appellant, that he admitted he may have caused the automobile accident by traveling left of center, had an odor of alcohol emanating from him, and admitted he had been recently drinking alcohol constituted sufficient information to cause a prudent person to believe appellant was driving under the influence. Therefore, appellant's assignment of error is overruled in this respect.

*State v. Belmont,* 2011 WL 982735, at *2-4.

The factual findings of the state appellate court are presumed to be correct.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1) provides.  Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.

12

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) provides. "The focus ... is on whether the state court's application of clearly established federal law is objectively unreasonable[;] . . . an unreasonable application is different from an incorrect one." *Bell v. Cone,* 535 U.S. 685, 694 (2002). To obtain habeas corpus relief, Petitioner must establish that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, -- U.S. --, 132 S.Ct. 26 (2011) (quoting *Harrington v. Richter*, 562 U.S. --, 131 S.Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision*." Id*. (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004). Petitioner has failed to meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. at 687; *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 697. Because petitioner must satisfy both prongs of the Strickland test to demonstrate ineffective assistance of counsel, if the court determines that the petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

Petitioner argues that the sheriff had no probable cause to send Deputy Morris to the hospital to request a blood sample from Petitioner, and that his blood alcohol test was therefore inadmissible under Ohio law. *See* O.R.C. § 4511.191(A)(3). The state appellate court, however, rejected this argument, concluding that law enforcement officials did not place Petitioner under arrest until after obtaining additional information from him at the hospital, at which time those officials had probable cause to arrest Petitioner: Petitioner had been involved in a serious automobile accident, Petitioner may have cause the accident by traveling left of center, Petitioner

14

admitted that he had drunk alcohol prior to driving and emitted the odor of alcohol.  At the actual time of Petitioner's arrest, law enforcement personnel had probable cause for the arrest.  A motion to suppress the results of the blood alcohol test would therefore have been denied.  Under these circumstances,  Petitioner cannot establish prejudice from his counsel's failure to file a motion to suppress.

## CLAIM TWO

In claim two, Petitioner alleges that the evidence against him was constitutionally insufficient to sustain his convictions, because the State failed to establish that Petitioner caused the death of Dalynaca Watrous and serious physical injuries to Marissa, David, and Harley Moorhead as the proximate result of driving while under the influence of alcohol and in violation of O.R.C. §§ 2903.06(A)(1); 2903.08(A)(1).  Petitioner also contends that the state appellate court's decision to the contrary was unreasonable.  In support of this claim, Petitioner refers, *inter alia*, to a lack of evidence indicating that he was under the influence of alcohol at the time of the accident.  The State's expert witness, Dr. Wyman, testified that Petitioner's blood alcohol level was between .048 and .063 at the time of the accident, below Ohio's *per se* violation level of .08.  *Trial Transcript*, 166-167; *Traverse*, PageID #678.  Dr. Wyman could not state whether Petitioner was impaired at the time of the accident.  *Id*. 183.  Petitioner also argues that the State failed to establish that he acted recklessly in causing the death of Dalynaca Watrous and injuries to other occupants of the car, because Petitioner tried to avoid a collision with Dennis Wilburn's car, which had entered Petitioner's lane of traffic at night, on a slippery road, and while traveling below the speed limit.  PageID #679.  The state appellate court rejected this claim, reasoning in relevant part as follows:

Appellant argues in his third assignment of error that his convictions were not supported by sufficient evidence. . . . In reviewing a sufficiency of the evidence claim, the relevant inquiry is whether any rational fact finder, viewing the evidence in a light most favorable to the state, could have found all of the essential elements of the crime proven beyond a reasonable doubt. *State v. Jones,* 90 Ohio St.3d 403, 417, 739 N.E.2d 300, 2000–Ohio–187, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, and *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Whether the evidence is legally sufficient is a question of law, not fact. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 1997–Ohio–52. On review for sufficiency, courts do not assess whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id.* at 390, 678 N.E.2d 541. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. Consequently, a verdict will not be disturbed based upon insufficient evidence unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749, 2001–Ohio–4; Jenks at 273, 574 N.E.2d 492.

\*\*\*

In the present case, appellant contends that the state clearly failed to prove he was under the influence of alcohol at the time of the fatal accident. In support, appellant argues that Dr. Wyman placed appellant's BAC between 0.048 and 0.063, which was below the statutory per se violation level of 0.08 BAC; Dr. Wyman admitted that, although the NHTSA article indicated average people can be impaired with a 0.05 BAC, he did not know appellant and some people can operate a motor vehicle in a satisfactory manner at that level; Deputy Aurigemma said appellant had only a slight to moderate odor of alcohol; and Deputy Morris testified that he smelled only a slight odor of alcohol on appellant at the hospital, appellant was cooperative, and appellant said he only had a "couple" of beers.

We have already addressed Dr. Wyman's partial reliance upon the NHTSA article, and we find that his testimony supports the jury's verdict. Dr. Wyman also concluded that a BAC of 0.05 would impair the average person's reaction time, which is the type of skill

necessary to properly operate a vehicle. Dr. Wyman also stated that the average person's judgment would be impaired at this BAC level. That appellant lacked proper judgment and reactions was demonstrated by Wilburn's testimony, as well as appellant's own admission at the hospital, that appellant had driven his vehicle into Wilburn's lane of travel. In addition, the same evidence appellant relies upon above to make his insufficiency and manifest weight arguments actually supports findings that the evidence was sufficient and not against the manifest weight of the evidence. In making his arguments above, appellant attempts to minimize the evidence by pointing out what the testimony did not demonstrate and explaining how it could have been better, when the proper focus is what the evidence did demonstrate. The evidence showed appellant admitted drinking a "couple" of beers at the hospital and then later admitted to drinking two double shots of Jack Daniel's and Coke; appellant had a BAC between 0.048 and 0.063 at the time of the accident, and Dr. Wyman said a 0.05 BAC results in impaired driving of the average person; Deputy Aurigemma said appellant had a slight to moderate odor of alcohol at the accident scene; and Deputy Morris testified he smelled a slight odor of alcohol on appellant at the hospital. While we agree that the evidence could have been even more convincing if appellant's BAC had been higher, if he had admitted to having more beers, if he had admitted to drinking more double shots, if Dr. Wyman had performed a personal examination of appellant to determine if he was "the average person," and if the deputies had smelled an overwhelming odor of alcohol, appellant presents no authority for the proposition that such quanta of evidence are required for a reasonable jury to conclude that appellant had been operating a vehicle while impaired. This evidence was sufficient to show impairment, and the greater amount of credible evidence supports a finding of impairment.

Appellant also argues that the state failed to show he recklessly caused the death of Watrous and the injuries to the other occupants because appellant testified he saw Wilburn's vehicle enter his lane of traffic and he attempted to avoid it by swerving on a wet road. Operating a vehicle "recklessly" is an element of both aggravated vehicular homicide under R.C. 2903.06(A)(2)(a) and aggravated vehicular assault under R.C. 2903.08(A)(2)(b). "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). As explained above, the state presented evidence that appellant was operating his vehicle while impaired by alcohol. Consuming alcohol prior to operating a motor vehicle may demonstrate heedless indifference to the consequences of one's

actions and a perverse disregard of a known risk, as is required by R.C. 2901.22 to demonstrate reckless conduct. *State v. Crabtree*, 10th Dist. No. 09AP–1097, 2010–Ohio–3843, ¶ 18, citing *State v. Gaughan,* 9th Dist. No. 08CA0010–M, 2008–Ohio–5528, ¶ 39, citing *State v. Wamsley* (Feb. 2, 2000), 9th Dist. No. 19484. The state also presented evidence that appellant was in Wilburn's lane of travel, and appellant admitted to police at the hospital that he traveled left of center and consumed alcohol. This evidence was sufficient to demonstrate appellant disregarded a known risk that his conduct was likely to cause a vehicular accident that would cause death or serious physical harm to others. Although appellant counters that he testified at trial that Wilburn's vehicle was in his lane of travel and was the cause of the accident, the jury apparently chose not to believe appellant's version of the events. Appellant has given this court no reason to reject the jury's credibility determination, and the jury was free to disbelieve appellant on this point, particularly given that he gave a conflicting statement at the hospital that he had traveled left of center. Therefore, we find the jury's verdict was based upon sufficient evidence and not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.

*State v. Belmonte,* 2011 WL 982735, at *7-9. Again, the factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1). Petitioner does not dispute these findings, nor has he met his burden of establishing that the factual findings of the state appellate court were unreasonable.

In determining whether evidence is constitutionally sufficient to sustain a conviction, this Court must consider the evidence presented in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277 (1992) (citing *Jackson v. Virginia*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"

18

*Id.* (quoting *Jackson,* at 326). For example, the trier of fact is entitled to disbelieve a defendant's uncorroborated testimony. *Id.*

Further, under the AEDPA, a state court's determination regarding a sufficiency of evidence claim is entitled to a "double layer" of deference. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *See also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome, and Petitioner has failed to do so here.

For the reasons discussed by the state appellate court, this Court agrees that, when viewing all of the evidence in the light most favorable to the prosecution, as the Court is required to do, the evidence was constitutionally sufficient to sustain Petitioner's convictions.

Claim two is without merit.

## CLAIM THREE

In claim three, Petitioner alleges that he was denied a fair trial based on the admission of testimony by the State's expert, indicating that "literature supports the fact that you are impaired at. . . .05, you are impaired." *Trial Transcript*, PageID #430. Petitioner contends that this testimony was not scientifically valid or reliable under the tests established in *Daubert v. Merrell*

*Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589 (1993), and *Miller v. Bike Athletic Co.,* 80 Ohio

St.3d 607 (1998).  The state appellate court rejected this claim as follows:

> Appellant argues in his second assignment of error that the trial court erred by allowing Dr. Wyman, chief toxicologist for the Franklin County Coroner's Office, to testify regarding the effect a BAC of .048 to .063 has on an average person. Appellant contends the testimony on the effects of low alcohol levels in the body was not scientifically valid or reliable. A trial court's ruling as to the admission or exclusion of expert testimony is within its broad discretion and will not be disturbed absent an abuse of discretion. *State v. Tomlin* (1992), 63 Ohio St.3d 724, 728, 590 N.E.2d 1253.
>
> Evid.R. 702 provides that:
>
> A witness may testify as an expert if all of the following apply:
>
> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information.
>
> In the present case, appellant's argument is that Dr. Wyman's testimony did not meet the requirement of Evid.R. 702(C) that his testimony be based on reliable scientific information. To determine the reliability of expert scientific testimony, a court must assess whether the reasoning or methodology underlying the testimony is scientifically valid. *Miller v. Bike Athletic Co*., 80 Ohio St.3d 607, 611, 687 N.E.2d 735, 1998–Ohio–178, citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 592–93, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469. To make that assessment, several factors are to be considered: (1) whether the theory or technique has been tested; (2) whether it has been subjected to peer review; (3) whether there is a known or potential rate of error; and (4) whether the methodology has gained general acceptance. *Id.; see also Valentine v. PPG Industries, Inc.*, 158 Ohio App.3d 615, 821 N.E.2d 580, 2004–Ohio–4521, ¶ 25. None of these factors are determinative. *Coe v. Young* (2001), 145 Ohio App.3d 499, 504, 763 N.E.2d 652. Rather, the inquiry is flexible, focusing on the underlying principles and methodologies and not on the resulting conclusions. *Miller* at 611.

Appellant's main argument relates to Dr. Wyman's use of an article from the National Highway Traffic Safety Administration ("NHTSA article"). Dr. Wyman testified the NHTSA article indicates that one may be impaired at even lower levels of BAC, such as 0.05, and at 0.05, people in the general population have loss of inhibitions, altered judgment, and slowed reaction times. Appellant relies upon the following portions of Dr. Wyman's testimony to argue that the NHTSA article was not scientifically reliable, both in general and as applied to the present case: Dr. Wyman testified he was not familiar with the studies underlying the NHTSA article; he admitted he did not know if the underlying studies were inaccurate or if they were done in a manner that was scientifically acceptable or able to pass peer review; he testified the level at which impairment occurs among the general population is variable; he did not know whether appellant was an average person to which the article would necessarily apply; and he admitted that some people would be perfectly able to operate a vehicle with a BAC of 0.048 or 0.063.

However, after reviewing the whole of Dr. Wyman's testimony, we find the trial court did not err in permitting Dr. Wyman to testify and rely upon the NHTSA article. Initially, we note that Dr. Wyman indicated that his opinions and testimony were based upon his knowledge, experience, and research, and he mentioned the NHTSA article as an example of research he had reviewed on the subject. He did not testify that the whole of his opinion on these issues was based upon that single article. Nevertheless, we find Dr. Wyman sufficiently established the reliability of the NHTSA article and he could rely upon it, in part, to support his opinions. Dr. Wyman stated the article was prepared for the United States government by two individuals who reviewed the complete literature on the subject, including peer review journals. Dr. Wyman also pointed out that there were over 100 papers in the review, so it was a "significant" review. His belief was that the article was valid based upon who published it. Dr. Wyman further testified that, since the NHTSA article was published in April 2000, he had not seen any papers invalidating the article. Instead, to the contrary, Dr. Wyman said he had attended week long workshops regarding the effects of alcohol and driving, and the article was used as a teaching aid. He could not comment as to whether the NHTSA article was "widely" accepted in the toxicology community, but he said it was an "important" document in the community. We conclude these circumstances demonstrate the theories in the NHTSA article were reliable, in that it was used and relied upon by members of the scientific community and based upon studies that had been subject to peer review.

> As to appellant's argument that the NHTSA article was not scientifically reliable as applied to him because the article dealt with the "average" person, and Dr. Wyman could not say whether appellant was an average person to which the article would necessarily apply, this argument goes to the weight rather than the admissibility of Dr. Wyman's testimony. As one court explained in addressing the admissibility of expert testimony based upon "the average person," "parties are, of course, at liberty to attack the evidence and to seek to demonstrate through cross-examination or the introduction of other evidence that the test results for an 'average person' do not accurately reflect the blood-alcohol level of appellant at the time of the offense. The jury can then decide what weight to give to the test results." *State v. Worthington,* 5th Dist. No.2004–CA–0083, 2005–Ohio–4719, ¶ 60 (finding that such an argument goes toward the weight rather than admissibility of the testimony). Thus, we do not find the trial court erred when it allowed Dr. Wyman to testify in terms of the "average person," based upon the NHTSA article. For these reasons, appellant's second assignment of error is overruled.

*State v. Belmonte*, 2011 WL 982735, at *5-6.

A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure' " in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir.1985)).

Moreover, federal habeas review of a state court evidentiary ruling is extremely limited. *See, e.g., Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990). A state court's evidentiary ruling will rise to the level of a constitutional violation only where it violates a bedrock principle of justice so as to deprive the defendant of a fundamentally fair trial. *Bey v. Bagley*, 500 F.3d

514, 519 (6th Cir. 2007); *Seymour v. Walker*, 224 F.3d552;  *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). The United States Supreme Court has "very narrowly" defined the category of infractions that meets this standard. *Bey,* 500 F.3d at 522 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). "The admission of evidence violates due process '[o]nly if there are no permissible inferences the jury may draw from the evidence[.]' " *Sutton v. Bell*, 683 F.Supp.2d 640, 692 (E.D. Tenn. 2010) (quoting *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991)). For the reasons addressed by the state appellate court, Petitioner has failed to meet this standard. This Court is not persuaded that the admission of the challenged evidence rendered Petitioner's trial so fundamentally unfair as to warrant habeas relief. Petitioner was free to, and did, cross-examine Wyman on the reliability of and basis for his opinion.

Claim three is without merit.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss*, Doc. No. 5, be **GRANTED** and that this action be **DISMISSED.**

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

   *s/  Norah McCann King*
Norah McCann King
United States Magistrate Judge

May 30, 2013